In re Anthony SICARI, a/k/a Sicari
Salerno, a/k/a Anthony
Salerno, Debtor.

CONGRESS TALCOTT CORPORATION,
Plaintiff,

v.

Anthony SICARI, Debtor–Defendant.

Bankruptcy No. 92–31419.

Adv. No. 92–7096.

United States Bankruptcy Court,
S.D. New York.

Sept. 14, 1994.

862

Todd Strassberg, Strassberg & Strassberg, P.C., New York City, for plaintiff.

Jeffrey L. Sapir, White Plains, NY, for debtor-defendant.

## DECISION ON OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A)

JEREMIAH E. BERK, Bankruptcy Judge.

Congress Talcott Corporation filed a complaint on November 5, 1992 seeking to bar debtor's discharge under 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A). Trial of this adversary proceeding commenced on June 28, 1993,[1] continued on September 27, 1993[2] and December 6, 1993[3], and concluded on December 7, 1993.[4]

At the conclusion of Plaintiff's case, Defendant moved for dismissal on partial findings pursuant to Fed.R.Civ.P. 52(c) and Fed.R.Bankr.P. 7052. Opposition to the motion was filed by Plaintiff, and the motion was taken under advisement pending the submission of Defendant's case. This decision resolves that motion.

For the reasons set out herein, I am satisfied that Plaintiff has sustained its burden of proof on its objections to discharge under both § 727(a)(2)(A) and § 727(a)(4)(A) of the Bankruptcy Code.

---

1. "I" refers to the June 28, 1993 transcript.

2. "II" refers to the September 27, 1993 transcript.

3. "III" refers to the December 6, 1993 transcript.

4. "IV" refers to the December 7, 1993 transcript.

## FINDINGS OF FACT

*Introduction.*

Anthony Sicari (hereafter "Sicari"), filed an individual voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 9, 1992. On December 23, 1992 his case was converted to one under Chapter 7 liquidation.

Plaintiff, a creditor of Sicari and his now-defunct corporation, filed an unsecured Proof of Claim herein on July 27, 1992 in the amount of $315,246.75, plus interest. Plaintiff's claim is based on a judgment entered on November 6, 1991 against Sicari and others in the New York State Supreme Court, New York County, in an action entitled *Congress Talcott Corporation v. Anthony Sicari, Inc., Anthony Sicari, Emanuel Sicari and Rallye Motors, Inc.*[5] The judgment, docketed in the Orange County Clerk's Office on November 14, 1991, arose from the sale of goods by Plaintiff to Anthony Sicari, Inc., and the personal guaranty thereof by Sicari individually.

Plaintiff alleges that at a time when Sicari was insolvent he initiated a series of fraudulent transfers of his personal assets, that these transfers were made without fair consideration, were gratuitous or for inadequate consideration, and were made with intent to hinder, delay or defraud creditors. Plaintiff further alleges that Sicari intentionally concealed these transfers, failed to disclose them in his bankruptcy petition, failed to disclose his equitable interest in transferred assets, and that such failure constitutes a false oath in his bankruptcy case. Plaintiff claims that Sicari's discharge in bankruptcy should, therefore, be denied pursuant to both 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A).

*Background.*

In 1985, Sicari began the now-defunct Anthony Sicari, Inc. to design and manufacture ladies' garments. He operated the business from three plants in Walden, New Paltz and Kingston, New York, and maintained a showroom in Manhattan. Sicari owned and operated the business from its inception until its bankruptcy liquidation in 1992. At its peak, the corporation employed more than 300 persons.

Plaintiff points to a number of prepetition asset transfers from Sicari to his relatives and to a friend. Esther Sicari is his wife, Diane Cagliuso is his sister-in-law, Santa Salerno is his mother and Emanuel Sicari is his uncle. All are "relatives" and "insiders" within the purview of 11 U.S.C. § 101(31)(A)(i). (V).[6] Tonia Cara, is a long-time friend of the Sicari family.

Real property transfers were made by Sicari shortly before the entry of substantial judgments against him. Creditor Israel Discount Bank obtained a judgment for $4,110,-882.55 against Sicari, his wife Esther and his uncle Emanuel on December 5, 1990 in the New York State Supreme Court. One week earlier, creditor Quaker Fabrics obtained a judgment for $515,552.07 against the same defendants.

Sicari's testimony throughout this trial was often unpersuasive, sometimes confusing, evasive or nonresponsive. His alleged lack of knowledge of the many suspect asset transfers, lack of documentation and records relating to them, and his explanation of "mistakes" by others, at times seemed incredible, particularly in light of his prior experience in business and financial matters.

### Section 727(a)(2)(A)

*The Kingston property.*

On August 13, 1980 Sicari and his wife Esther acquired a commercial building, now known as 290–292 Fair Street, in the City of Kingston, New York (hereafter "Kingston property"), for approximately $47,000.00. (IV, Defendant's Exhibit I; III, 347). No significant improvements were made to the

---

5. A discrepancy exists between the caption of the action as stipulated by the parties in the Second Amended Pre–Trial Stipulation, and the caption which appears on the copy of the Judgment, incomplete as it is, attached to Plaintiff's Proof of Claim. A portion of the caption does not appear on the copy attached to the Proof of Claim; however, of those defendants' names appearing, the order of the defendants' names differs from the caption recited in the Second Amended Pre-trial Stipulation.

6. "V" refers to the Second Amended Pre–Trial Stipulation filed June 28, 1993.

property prior to its transfer by them. (III, 347).

In February, 1983, Sicari and his wife established a "Clifford Shortterm Trust" for the benefit of their children. (V; Plaintiff's Exhibit 9).[7] Esther Sicari served as trustee of the Trust from that time until about 1990, when Sicari's sister-in-law, Diane Cagliuso, replaced her as trustee. (III, 344–45; II, 293; Plaintiff's Exhibit 9).

Although Sicari testified that the Kingston property was conveyed to the Trust in 1983 (III, 336–37, 344, 347), the deed running from him and his wife to the Trust is dated August 24, 1990, and was recorded in the Ulster County Clerk's Office on October 22, 1990. (Plaintiff's Exhibit 1; II, 267). Edward Levine testified that based on his nine years of employment as Assessor for the City of Kingston and his examination of the City Assessment Roll, the market value of the Kingston property in either August or October, 1990, was $221,500.00. (I, 27–28). The tax stamps on the deed reflect a consideration of no more than $30,000.00.

Sicari testified that he and his wife divested themselves of all interest in the Kingston property at the time of its transfer to the Trust. (III, 345, 350, 356). Plaintiff, however, contends that despite the apparent transfer to the Trust in 1990, Sicari retained an equitable interest in, and continued to exercise control over and to receive rental income from, the Kingston property. It is claimed, therefore, that the transfer to the Trust was a sham transaction made with intent to hinder, delay or defraud creditors, and that Sicari failed to disclose an equitable interest in the property in his bankruptcy schedules.

*Rental Income—Tenant, Fredi Kletter.*

Fredi Kletter, a tenant of the Kingston property, testified that she had been conducting business there for nine years as Catskill Army Navy. Between May 10, 1991 and June 9, 1992, she paid $500.00 per month as rent for the premises.

Kletter produced an unsigned "Lease Agreement" setting forth a term from March 1, 1991 to March 31, 1996, as the written agreement memorializing the rental agreement she had negotiated with someone named Irene Lawrence. (Plaintiff's Exhibit 7; I, 39–40). Kletter was unable to state whether Irene Lawrence represented the landlord, but testified that Lawrence maintained the property. (I, 34, 52). The unsigned lease bears the heading: "Anthony Sicari, 521 Main Street, New Paltz, N.Y. 12561, (914) 255–4550," and shows "Anthony & Esther Sicari" as the landlords.

According to Kletter, this lease was not signed because changes were to be made to it and a new lease was to be drawn. (I, 51). Kletter did not know if the changes pertained to the name of the landlord(s). As far as she knew the new lease "was just going to be the same," and she acknowledged her own notation at the top of the lease agreement stating: "Spoke to Patty on 1–2–92 about not receiving lease—not to worry about rent— will honor this agreement." (I, 51–52). Kletter further testified that she never saw a new lease, that she could not recall whether she ever met the landlord, and that she made rent checks payable to whom required. (I, 52–53).

Sicari could not explain why the lease, albeit unsigned, would contain a heading bearing his name, address and telephone number, and show his wife and him as landlords. (II, 286). He acknowledged, however, that Irene McGovern managed buildings he owned in the early 1990's, and that his secretary/bookkeeper, Patty Jacobsen, managed the Kingston property after January 1, 1990. (II, 291–92).

Tenant Kletter further testified that she received a letter addressed "Dear Tenant," stating that "[e]ffective 5–11–92, all rental checks are payable to: Sicari–Clifford Trust, RD 1 box 611, Gardiner, N.Y. 12525. Thank You, Diane Cagliuso Trustee." (Plaintiff's Exhibit 8; I, 42). Thereafter, Kletter made her rent checks payable to the Sicari–Clif-

---

7. Upon examination of Exhibit 9 entitled "Clifford Shortterm Trust For Child," the document appears to lack the signature of Esther Sicari, the acknowledgement of Anthony Sicari's signa- ture, and the "Schedule A" purportedly describing the trust res. Nevertheless, by the Second Amended Pre-trial Stipulation the parties have agreed that a valid trust was created in 1983.

ford Trust. (Plaintiff's Exhibit 6, Ck. # 4133, dated 6–6, 1992; I, 44, 47).

Twelve cancelled rent checks produced by Kletter cover the period from May, 1991 to April, 1992. (Plaintiff's Exhibit 6). Of those twelve checks, ten are payable to either "A. Sicari" or "Anthony Sicari," and two are payable to "A & E Sicari." Kletter testified that she made those checks payable as such pursuant to the provisions of the unsigned lease agreement. (I, 40). Thus, despite Sicari's testimony that the Kingston property had been transferred to the Trust in 1983, (1) its transfer is evidenced by a deed executed and recorded in 1990, and (2) after the deed transfer, Kletter continued to make rent checks payable to Sicari and his wife.

Plaintiff established that two rent checks never found their way into the Trust account. Rent check No. 341 of Catskill Army Navy, dated October 8, 1991 and payable to "Anthony Sicari," was endorsed by Sicari and deposited in his wife's personal bank account. (Plaintiff's Exhibit 6; Plaintiff's Exhibit 30, 41; Plaintiff's Exhibit 33; II, 239, 270–71). Rent check No. 4063 of Catskill Army Navy, dated March 5, 1992 payable to "A. Sicari," was endorsed by Sicari and deposited in the personal bank account of Tonia Cara, a long-time family friend. (Plaintiff's Exhibits 6 and 32; II, 224–28).

*Rental Income—Tenant, John and Beverly DeGasperis.*

John DeGasperis testified that he is employed by John Street Jewelers, a business owned by his wife, Beverly, and operated at the Kingston property. The premises are occupied pursuant to written lease; however, DeGasperis did not produce the lease and could not recall who is named thereon as landlord.

DeGasperis produced nine rent checks for the Kingston property, dated from September 13, 1991 to June 15, 1992, all bearing his signature. The first six checks (the last of which is dated April 28, 1992) are payable to "Anthony Sicari, Inc." The remaining three checks, all dated in June, 1992, are payable to the "Sicari–Clifford Trust."

Payment of rent by DeGasperis to the Sicari–Clifford Trust commencing in June, 1992 is consistent with another tenant, Catskill Army Navy, so doing that same month. Payment of rent by both tenants to the "Sicari–Clifford Trust" began the same month that Sicari filed his personal bankruptcy petition.

*Rental Income—Tenant, Regina Heller.*

A rent check dated March 12, 1992 from Regina Heller, another tenant of the Kingston property, was deposited in Sicari's wife's personal bank account. This check was payable to "Anthony Sicari" and marked "Rent/Security 290 Fair." (Plaintiff's Exhibit 33; II, 267–68).

Another check from Regina Heller is dated May 1, 1992, made payable to "Anthony Sicari," and marked "May Rent—290 Fair." It bears Sicari's endorsement and was deposited in the Trust bank account. (Plaintiff's Exhibit 31).

*The insurance proceeds check.*

In April, 1992 a check of Chubb Group of Insurance Companies in the amount of $45,-552.00 was deposited to the Sicari–Clifford Trust bank account. The check was payable to "Anthony & Esther Sicari, The Money Store/Empire State Inc. & Key Bank of Eastern New York," and bears the endorsements of all payees. Sicari testified that the check represented insurance proceeds for damage sustained to the roof of his personal residence during an ice storm. He told his secretary/bookkeeper, Patty Jacobsen, that the check was for repair of his roof and that she should use it to pay the contractor in cash as the repair work progressed. (III, 394–95).

Although Sicari did not personally transfer funds from the Trust or personally pay the contractor, he believes that $45,500.00, as shown on the invoice of Compact Air Systems, Ltd., the roof-repair contractor, was paid in cash to its owner, a Mr. Castro, by his secretary/bookkeeper. (III, 390–93; Defendants Exhibit P). The invoice of Compact Air Systems, Ltd. is dated May 22, 1992 and reflects an initial payment of $35,000.00. Additional payments are noted thereafter in the amount of $5,000.00 on May 26, $5,000.00 on May 29, and $500.00 on May 29, 1992. (Defendant's Exhibit P).

Sicari's secretary/bookkeeper, Patricia Jacobsen, testified that she "took care of the payments" to the roof-repair company and that the payments were made in cash. (IV, 454–456, 459–60; Defendant's Exhibit P). Jacobsen obtained the cash from Diane Cagliuso, trustee of the Sicari–Clifford Trust, who would "cash the checks ... and give [Jacobsen] the money." (IV, 459).

After deposit of the insurance proceeds check into the Trust bank account on April 29, 1992, the following checks were drawn on the Trust: May 7, 1992, Check No. 507 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 8, 1992, Check No. 508 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 11, 1992, Check No. 509 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 12, 1992, Check No. 510 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 14, 1992, Check No. 511 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 18, 1992, Check No. 512 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso; May 21, 1992, Check No. 513 to the order of "Cash," $5,000.00, endorsed by Diane Cagliuso. These Trust account checks total $35,000.00.

Sicari claims not to have known that the $45,552.00 insurance proceeds check was deposited to the Trust account. (II, 245). However, he acknowledged his endorsement on it and testified that the check was given to his secretary/bookkeeper to procure the remaining endorsements for deposit. Sicari could not explain why an insurance proceeds check covering damage to his personal residence would find its way into his children's Trust account. Nor did he offer any evidence to substantiate his claim that the total amount of the insurance proceeds check was either returned to him by the Trust or expended on his behalf. Payments apparently received by the roof-repair contractor total $45,500.00; withdrawals from the Trust account subsequent to the deposit of the insurance proceeds check total $35,000.00. Sicari failed to account for the remaining $10,500.00 of insurance proceeds which found its way into the Trust account.

*The Virgo Building.*

Sicari and his wife also owned real property located at 11–15 Main Street, New Paltz, New York, known as the "Virgo Building," which they had purchased in or about 1979. (II, 261; III, 313; Plaintiff's Exhibit 2). By deed dated August 22, 1990, Sicari and his wife transferred this property to their longtime friend Tonia Cara. The deed was recorded in the Ulster County Clerk's Office on September 25, 1990. (V; Plaintiff's Exhibit 2; III, 313).

Sicari testified that he has known Tonia Cara for fifteen years as a friend of his mother and that he "sold" the Virgo Building to her in 1990 for $161,000. (II, 258–59, III, 316). Plaintiff contends that this transfer was a sham transaction, made without fair consideration during the pendency of Plaintiff's state court action against Sicari, and was effected with intent to hinder, delay or defraud creditors.

Sicari explained that a $76,000 debt owing by him to Tonia Cara was "forgiven" in exchange for the transfer of the Virgo Building to her, and that another "approximately $76,000" was paid to his wife in cash, although he did not know when. (III, 314–318; 320). He did not account for the remaining $9,000 balance of the alleged $161,000 sale price.

His trial testimony on this point was inconsistent with his pre-trial deposition testimony of February 3, 1993. (III, 324–27). At the deposition Sicari testified that payment of the $161,000 purchase price for transfer of the Virgo Building to Tonia Cara was made by satisfaction of the mortgage with Intercounty Bank, payment of a "small amount of money" owed to Cara for maintenance services and repair of the building, and payment of a check for "approximately $100,000." (III, 325–327; Plaintiff's Exhibit 30, 13–16). Sicari could not produce any records or documentation to substantiate receipt of payment for sale of the Virgo Building to Cara, claiming that he had none. (II, 264–65).

Vincent Giordano, a tenant of the Virgo Building, testified that he and his wife have occupied an apartment there since August, 1991 pursuant to written lease. The Lease Agreement produced by Giordano covers a

term of two years commencing on August 1, 1991 and ending on July 31, 1993. The landlord is shown thereon as "Tonia Cara c/o Sicari," and bears a heading which states: "Anthony Sicari, 521 Main Street, New Paltz, N.Y. 12561. (914) 255–4550." (Plaintiff's Exhibit 18).

Two signature pages are included in Giordano's copy of this lease. Page 3 bears the photocopied signatures of both tenants affixed on July 22, 1991, of Esther Sicari as landlord, and of Irene McGovern, Manager, as a witness. Page 4 bears photocopied signatures of both tenants affixed July 22, 1991, of Tonia F. Cara as landlord, and of Irene McGovern as witness. Giordano testified that he and his wife signed the lease in the "dress building" of Anthony Sicari, Inc., and when they gave the lease to "Irene, the property manager," Esther Sicari's signature appeared thereon as landlord. Two weeks later a copy of the lease was returned to the Giordanos. However, within a few days thereafter, Giordano received a new signature page with Tonia Cara's signature substituted for Esther Sicari's as landlord. (I, 84–94; Plaintiff's Exhibit 18).

Tenant Giordano produced eleven cancelled checks in payment of security and rent for the period August, 1991 through May, 1992. All are payable to Tonia Cara. Giordano testified that one of two checks originally drawn for the first month's rent and security was made payable to Esther Sicari as directed by the property manager, Irene. (I, 100, 109). Giordano testified that these two checks were lost by the landlord, and replacements were issued payable to Tonia Cara. (I, 94; Plaintiff's Exhibit 19).

One of the twelve rent checks was deposited in the Trust bank account on or about May 1, 1992. (Plaintiff's Exhibit 31; II, 259). Five of the rent checks were deposited in Sicari's wife's personal bank account between August 26, 1991 and December 11, 1991. (Plaintiff's Exhibit 33; II, 269–70).

*The Medical Building.*

Since 1987, Sicari owned jointly with his uncle, Emanuel Sicari, commercial property at 75 East Main Street, Walden, New York, known as the "Medical Building." (II, 246; Plaintiff's Exhibit 3). Vladimir Nabagiez, M.D. was a tenant of Medical Building and paid rent monthly.

Sicari identified thirteen cancelled rent checks of Dr. Nabagiez, dated from May 1, 1991 to May 1, 1992. (Plaintiff's Exhibit 24; II, 246–47). Ten are payable to Anthony Sicari, Inc., and three are payable to Anthony Sicari individually. Eleven of these checks were deposited into the Trust bank account within the year preceding Sicari's bankruptcy filing. (Plaintiff's Exhibits 24, 31; II, 246–54).

Plaintiff contends that the transfer of these rent checks to the Trust were made without fair consideration and good faith, that the Trust assets are, in actuality, the personal assets of Sicari, and that the transfers to the Trust within one year of Sicari's filing bankruptcy were made with intent to hinder, delay or defraud creditors.

*Widmark Farm.*

Sicari testified that he and his uncle, Emanuel, also owned property known as "Widmark Farm". Howard Widmark was a tenant of the property. Rental income of $600.00 from this tenant in the form of a postal money order for "Rent 11/15/91 to 12/15/91" was deposited to the Sicari–Clifford Trust bank account on November 26, 1991. The money order was endorsed "Anthony Sicari," with the Trust bank account number written beneath. (Plaintiff's Exhibit 31). Another Postal Money Order from Widmark payable to Anthony Sicari for "Rent 4/15/92 to 5/15/92" in the amount of $600.00 was deposited in the Trust bank account on or about May 1, 1992, approximately one month prior to Sicari's bankruptcy. (Plaintiff's Exhibit 31; II, 255).

Upon the evidence presented, I am satisfied that within one year before bankruptcy Sicari transferred personal assets in an attempt to put them beyond the reach of the collection efforts of his creditors.

### Section 727(a)(4)(A)

*False oath or account.*

Plaintiff alleges that Sicari's failure to disclose various assets in his bankruptcy schedules constitutes a false oath under Code § 727(a)(4)(A). Plaintiff claims that Sicari's

transfer of personal assets to the Sicari–Clifford Trust created an equitable interest in the Trust which should have been listed in his bankruptcy schedules and that this omission constitutes a willful concealment of assets. Plaintiff further claims that deposit of rental income into bank accounts of his wife and Tonia Cara likewise created an equitable interest in those accounts which should have been listed in Sicari's bankruptcy schedules.

Plaintiff also points to Sicari's failure to schedule his interest in "Sicari Associates" as further evidence of his attempt to conceal assets from his creditors. Sicari Associates is "an association" between Sicari and his uncle, Emanuel, which existed throughout the year preceding the filing of this bankruptcy case. Sicari owned ninety percent and Emanuel owned ten percent of Sicari Associates. The assets of Sicari Associates apparently include four parcels of real property, which parcels are separately listed in Sicari's bankruptcy schedules. (V). However, Sicari was obligated also to disclose his interest in Sicari Associates.

Upon the evidence presented, I am satisfied that Sicari intentionally failed to disclose his interests in the Kingston and Virgo properties, the Trust bank account, the bank accounts of his wife and Tonia Cara and his interest in Sicari Associates.

## DISCUSSION

### CODE SECTION 727(a)(2)(A)

Code § 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; ...

11 U.S.C. § 727(a)(2)(A).

■ To bar a debtor's discharge under § 727(a)(2), an objectant must prove that: (1)

the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; and (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done. *Baltic Linen Co., Inc. v. Rubin (In re Rubin)*, 12 B.R. 436, 441 (Bankr.S.D.N.Y. 1981); 4 *Collier on Bankruptcy*, ¶ 727.02[b] (15th ed. 1994).

■ In furtherance of the principle of permitting the honest debtor a debt-free fresh start in life, objections to discharge are to be construed strictly against the objector and liberally in favor of the debtor. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976). The burden of proof on an objection to discharge lies with the objectant (Fed.R.Bankr.P. 4005), and each element of the objection must be established by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174 (5th Cir.1992). However, when sufficient evidence is presented by the plaintiff to establish a prima facie case, the burden then shifts to the debtor to offer credible evidence in rebuttal. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *EFA Acceptance Corporation v. Cadarette (In re Cadarette)*, 601 F.2d 648, 650 (2nd Cir.1979); *Continental Illinois National Bank and Trust Company of Chicago v. Bernard (In re Bernard)*, 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989).

*Rental income from the Medical Building.*

■ Sicari holds a ninety percent ownership interest in the Medical Building, which he owns jointly with his uncle. Eleven rent checks, payable to either Anthony Sicari, Inc. or Anthony Sicari individually, dated between May 1, 1991 and May 1, 1992, were deposited to the Sicari–Clifford Trust account, in which Sicari claims to have held no

interest, within the year prior to his bankruptcy filing. (III, 423).

Sicari claimed to have no knowledge that rent checks were deposited to the Sicari–Clifford Trust bank account. Rent checks were received at Sicari's business address, and Sicari had instructed his secretary/bookkeeper to deposit them. (III, 405–06). Sicari testified that his individual and corporate endorsements appearing on the rent checks, either in his name or that of Anthony Sicari, Inc., were in the handwriting of his secretary/bookkeeper, Patricia Jacobsen (II, 247), whom he had authorized to endorse checks in his name and to make deposits to his various bank accounts. (II, 284). Sicari explained that any erroneous deposits would be reconciled at the end of each month. (III, 407). He offered no evidence, however, to show the return of any rental income from the Trust account to his personal account. Although Sicari's accountant, Scott M. Stone, testified on his behalf, no testimony was elicited to support Sicari's claim that the rental income was returned to him from the Trust. Sicari did not explain why rental income belonging to him continued to find its way into the Trust bank account, month after month, even after he had learned of the "erroneous" deposits.

Sicari's testimony that these rent deposits were returned to him by means of end-of-month reconciliations belies his denial of knowledge of the erroneous Trust deposits. Moreover, this testimony is inconsistent with his statement that he received no money from the Trust during the year prior to filing his bankruptcy petition. (III, 426). Clearly, if personal rental income deposited to the Sicari–Clifford Trust within the year prior to the bankruptcy filing was not returned to Sicari, a transfer of assets has, in fact, occurred within the proscribed one-year period.[8]

The objectant to discharge must further establish that the act was that of the debtor or his duly authorized agent. Sicari testified that his secretary/bookkeeper endorsed the rent checks and made the deposits to his bank accounts. He further acknowledged that she did so with his authorization and at his specific instruction. (II, 284; III, 406). Sicari's claim of ignorance as to the conduct of his business affairs and the acts of his secretary/bookkeeper is unpersuasive. Sicari knew the rent checks were being deposited to incorrect bank accounts by virtue of his knowledge of the alleged month-end account reconciliations. Even after Sicari became aware of these "erroneous" rent-check deposits, it appears that they continued and that no steps were taken to assure that deposits would be made to the proper accounts in the future.

To sustain its objection to discharge, Plaintiff must also show that at the time of the transfers Sicari had the requisite intent to hinder, delay or defraud his creditors. Actual intent is required, although fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir.1985). Because of the unlikelihood that a debtor will admit to a fraudulent intent, "the courts may deduce fraudulent intent from all the facts and circumstances of a case." *Devers*, at 754. Further, a debtor's reckless indifference to the truth has been held to be the equivalent of fraud for purposes of an objection to discharge under § 727. *Diorio v. Kreisler–Borg Construction Co. (In re Diorio)*, 407 F.2d 1330 (2nd Cir.1969); *MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 883 (Bankr. S.D.N.Y.1990).

Various factors are recognized as indicia of fraud under § 727(a)(2)(A). In *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89 (5th Cir.1989), the court, (citing *In re Schmit*, 71 B.R. 587 (Bankr.D.Minn.1987)), examined the following factors:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

---

8. A deposit to a bank account is a transfer. 4 *Collier on Bankruptcy*, ¶ 727.02[5] (5th ed. 1994).

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*Chastant,* 873 F.2d at 91.

These factors are relevant here. First, there is no claim that the transfers of rental income to the Trust account were made for consideration; rather, the transfers are claimed to have been made by mistake. Although Sicari claims the rent moneys were returned to him by the Trust, he offered nothing to substantiate any repatriation of these funds. Additionally, this claim contradicts his testimony that he did not receive money from the Trust during the year prior to bankruptcy. (III, 426). I find that these transfers were gratuitously made.

▆▆▆▆ Second, the rental income was transferred to the Sicari–Clifford Trust for the benefit of Sicari's children. "A presumption of actual fraudulent intent necessary to bar a discharge arises when property is either transferred gratuitously or is transferred to relatives." *In re Chastant, Id.* at 91, (quoting *In re Butler,* 38 B.R. 884, 888 (Bankr.D.Kan.1984)). A transfer of property to relatives "will be subject to close scrutiny, and 'the relationship of the parties in conjunction with other circumstances will often make the [plaintiff's] case compelling notwithstanding the absence of direct evidence of fraud.'" *Loeber v. Loeber (In re Loeber),* 12 B.R. 669 (Bankr.D.N.J.1981); *Accord, In re Chastant,* at 91.

In *In re Chastant,* 873 F.2d 89, 91 (5th Cir.1989), where the debtor transferred property to a trust established "both gratuitously and for his children," the Court stated:

[t]his creates a presumption of an intent to defraud establishing plaintiff's prima facie case and shifting to [debtor] the burden of demonstrating that he lacked fraudulent intent.

*Chastant,* at 91. Upon debtor's failure to rebut this presumption, the Court denied discharge under § 727(a)(2)(A).

Similarly, Sicari transferred property to the Trust for the benefit of his children without consideration. A presumption of fraudulent intent thus arises, shifting to Sicari the burden of establishing that he lacked such intent.

Sicari claimed that the deposits of his personal rental income into the Trust account were mistakenly made and that these deposit errors were corrected by his secretary/bookkeeper and his accountant through a reconciliation of bank accounts at the end of each month. However, no bank statements, checks or deposit slips were produced to support his claim that these funds were ever returned to him. Curiously, although Sicari called his accountant as a witness, nothing was offered to verify Sicari's claim that reconciliation of accounts and repatriation of funds was ever made.

Patricia Jacobsen, Sicari's secretary/bookkeeper, outlined the numerous and diverse duties encompassed by her employment, which included the collection and deposit of rent checks generated from the various Sicari properties. (IV, 448). Jacobsen acknowledged that she had authority to sign Sicari's name on checks for purposes of depositing them to bank accounts. When asked whose name she had authority to sign, Jacobsen responded, "Mr. Sicari's. To endorse the checks and deposit them." (IV, 449). Jacobsen acknowledged that checks were sometimes deposited to incorrect accounts and testified that the errors were corrected by the transfer of funds to the correct account. (IV, 450). No documentation was offered to support any transfers that might have corrected these "erroneous" deposits of Sicari's rental income.

Jacobsen's testimony as to her duties and the authority delegated to her during her six years of employment as Sicari's secretary/bookkeeper was consistent with Sicari's testimony in that regard. No claim is made that Jacobsen acted without, or beyond the scope of, her authority. Considering the type of duties delegated by Sicari to her over the six-year employment, including the man-

agement of his properties and the hiring of property managers and real estate agents, it must be concluded that Sicari held confidence in Jacobsen's ability to properly perform them. Surely Sicari had ample opportunity to observe, supervise and assess Jacobsen's performance.

It must further be concluded that a longtime employee entrusted with management of numerous bank accounts and diverse rental properties possessed the ability to comprehend the importance of maintaining separate bank accounts and customary bank and other records. Further, if Sicari retained no control over the Sicari–Clifford Trust, as he now claims, no explanation was offered as to how or why his secretary/bookkeeper would have access to bank records so as to enable her to deposit Sicari's personal funds to the Trust account. Nor was anything offered to explain why Jacobsen would have repeatedly deposited Sicari's personal funds to the Trust account, nor why she would have continued to make these erroneous deposits after being informed by Sicari's accountant of the mistakes.

Eleven separate monthly rent checks from the Medical Building for rent between May 1, 1991 and May 1, 1992, were "misdeposited" to the Trust bank account within the year prior to bankruptcy, although each check was made payable to either "Anthony Sicari" or "Anthony Sicari, Inc."

The remaining factors which may evidence fraudulent intent also lead to the conclusion that Sicari transferred property with intent to hinder, delay or defraud his creditors. Inquiry is first made into whether Sicari retained possession, benefit or use of the property transferred. While Sicari claims that the numerous deposits of personal funds to the Sicari–Clifford Trust account were the result of "secretarial errors," he did not reveal why his secretary/bookkeeper had access to the Trust account at all. He further claimed that these "errors" were corrected by his accountant and his secretary/bookkeeper by means of month-end reconciliations, but had no records or bank statements to support this. The Trustee, Diane Cagliuso, who presumably would have made the correcting bank transfers, did not testify.

Further, the $45,552 roof-repair insurance proceeds check payable to Sicari personally was also deposited to the Trust account by "mistake," while only $35,000 of it appears to have been paid out to the roofing contractor. No evidence was presented to substantiate Sicari's claim that the balance of the insurance proceeds of $10,552.00 was paid on his behalf or returned to him from the Trust. Although Sicari insists that he retained no interest in his children's Trust, the conclusion is inescapable that his personal funds went in and out of the Trust account on a regular basis. It defies credulity that this practice, continued over a period of time without any account-correction transfers being made, resulted from "secretarial error." Rather, I am satisfied that Sicari retained sufficient control over and use of the Sicari–Clifford Trust funds to support a finding of intent to hinder, delay or defraud creditors.

The remaining factors indicative of fraudulent intent are the existence or cumulative effect of a pattern or series of transactions, or course of conduct, after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors, and the general chronology of events. *In re Chastant*, 873 F.2d at 91; *EFA Acceptance Corporation v. Cadarette (In re Cadarette)*, 601 F.2d 648, 651 (2d Cir.1979). I am persuaded that Sicari transferred personal assets in an effort to place them beyond the reach and pending collection efforts of his creditors.

Money judgments were entered against Sicari in November and December of 1990 in the New York State Supreme Court for $515,552.07 and $4,110,882.55. On September 25, 1990, a deed was recorded in Ulster County whereby Sicari and his wife transferred their Virgo Building property to Tonia Cara, a long-time family friend. No evidence was offered to substantiate payment of the alleged sale price of $161,000.00. Rather, Sicari claimed forgiveness of a $76,000.00 debt allegedly owing by him to Cara, and payment of the balance to his wife in cash as consideration for the "sale." No documentation was offered to substantiate the claimed antecedent debt owing to Cara or payment of any part of the sale price by Cara.

On October 22, 1990, a deed was recorded in Ulster County transferring the Kingston property from Sicari and his wife to the Sicari–Clifford Trust. Tax stamps on the deed into the Trust reveal a consideration of no more than $30,000. At the time of transfer, the market value of the property was $221,500.00.

Likewise, rental income from the Medical Building found its way into the Trust account within one year of bankruptcy. And likewise, nothing was offered to support Sicari's claim that these funds were ultimately returned to him.

These transfers reveal a continuing course of conduct which effectively placed substantial assets beyond the reach of Sicari's creditors, either by design or with such reckless indifference to the truth as to establish the intent necessary to sustain an objection to discharge under § 727(a)(2)(A).

■■■■ Sicari is a seasoned business person who has engaged in his own dress design and manufacturing business since 1985, operating three plants and a Manhattan showroom, and conducting domestic and international transactions in the hundreds of thousands of dollars. Considerations relating to assets, liabilities and complexity of the debtor's business have been held to be relevant, for example, in determining whether a debtor should be denied a discharge for failure to keep books of account. *Goff v. Russell Company*, 495 F.2d 199 (5th Cir.1974). In *Goff*, a merchant was held to a higher standard of care than an unsophisticated wage earner dealing primarily in cash, where adequacy of business records was at issue. Similarly, upon consideration of the complexity of Sicari's various business transactions, it is not unreasonable to expect him to have properly segregated personal, corporate, and trust funds. Further, it is not unreasonable to expect Sicari to have maintained adequate books of account with respect to various transactions involving his business and personal affairs, so as to enable him to substantiate his claim that mistakenly-deposited rent checks were repatriated to the proper accounts. Sicari's failure to do so supports a finding of reckless indifference sufficient to establish the requisite intent under § 727(a)(2)(A).

*Rental income from Widmark Farm.*

Sicari also owned commercial property known as Widmark Farm. Rental income generated by this property was likewise deposited to the Sicari–Clifford Trust bank account on November 26, 1991 and on May 11, 1992.

The deposit of rental income from Widmark Farm to the Trust account parallels the events surrounding the diversion of rental income from the Medical Building to the Trust. These Trust account deposits likewise took place within one year of this bankruptcy.

For the reasons set out above regarding the alleged "erroneously-deposited" Medical Building rental income, and considering the similarity of events and the pattern of the transactions, I am satisfied that Plaintiff has likewise here established the requisite intent under § 727(a)(2)(A). Sicari failed to present sufficient evidence in rebuttal. Plaintiff has thus sustained its burden of proof as to the Widmark Farm rent-check transfers.

*Insurance proceeds.*

The $45,552.00 insurance-proceeds check representing reimbursement for roof damage to Sicari's personal residence was deposited to the Trust account in April, 1992. Sicari acknowledged both his and his wife's endorsements on the check, but denied any knowledge that his secretary/bookkeeper, Patty Jacobsen, had deposited the check to the Trust account. (II, 245). He believes Jacobsen made payments in cash to the roofing contractor as Sicari had instructed. (III, 390–94; Defendant's Exhibit P).

The roof-contractor's May 22, 1992 Invoice reflects a $35,000.00 payment on account, and payments thereafter on May 26 of $5,000.00, on May 29 of $5,000.00 and $500.00, for a total paid as of May 29, 1992 of $45,500.00.

Jacobsen testified that she handled the insurance proceeds check and that she personally made the cash payments to the contractor. She stated that Diane Cagliuso, Trustee of the Sicari–Clifford Trust, gave her the cash to pay to the contractor. The con-

tractor would initial the invoice to show receipt of each cash payment. (IV, 455–56).

No testimony was elicited from Jacobsen to explain why or how insurance proceeds for damage to Sicari's personal residence were deposited to his children's Trust account. Jacobsen testified that she did not report to Sicari where checks were deposited. She stated that the bank accounts were reconciled monthly by Sicari's accountant, and that when it was discovered that checks had been deposited to the wrong accounts, "correcting transfers" would be made the following month.

The insurance proceeds check was diverted to the Trust account within two months of Sicari's bankruptcy filing. (Plaintiff's Exhibit 31, Bank records of M & T Bank for the Sicari–Clifford Trust account). This check did not belong to the Trust, but rather to Sicari and his wife, who jointly owned the insured premises. Although Sicari and Jacobsen testified that a total of $45,500.00 was paid in cash to the roofing contractor, withdrawals from the Trust account total only $35,000.00. No proof was offered to show that the remaining $10,552.00 held in the Trust account was either paid out on Sicari's behalf or returned to him.

Accordingly, I find that $10,552.00 was transferred by Sicari's authorized agent, Jacobsen, to the Trust within one year his bankruptcy. Further, for the reasons previously discussed regarding diversion of the rental income, I likewise here find the requisite intent under Code § 727(a)(2)(A). Plaintiff, having thus established a prima facie case, the burden shifted to Sicari to offer credible evidence in rebuttal. Sicari failed to meet that burden.

*Transfer of the Kingston property and diversion of rental income.*

Sicari and his wife transferred the Kingston property to the Trust in 1990.[9] Sicari did not list any interest in the Kingston property in his bankruptcy schedules, and

claimed to have retained no interest in the property after its transfer to the Trust.

Plaintiff contends that this transfer was made for inadequate consideration and with intent to hinder, delay or defraud creditors. Plaintiff further contends that Sicari retained a secret interest in the property, continuing after the transfer to exercise control over and receive rental income from it. Plaintiff claims, therefore, that within the year prior to filing for bankruptcy, Sicari concealed his interest in the Kingston property and transferred rental income therefrom with intent to hinder, delay or defraud his creditors, constituting grounds for denial of his discharge under § 727(a)(2)(A). Since the transfer took place in 1990, more than one year prior to Sicari's bankruptcy, Plaintiff relies on the doctrine of "continuing concealment."

Although § 727(a)(2)(A) proscribes transfers made within one year of bankruptcy, transfers made beyond that period may support an objection to discharge if it is found to be a continuing concealment. 4 *Collier on Bankruptcy,* ¶ 727.02[2]; *Thibodeaux v. Olivier (In re Olivier),* 819 F.2d 550, 555 (5th Cir.1987). Under this well-settled doctrine:

> ... the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, ... such concealment is within the reach of section 727(a)(2)(A).

*In re Olivier,* at 555.

Concealment is not limited to physical secretion, but extends to other conduct, such as "placing assets beyond the reach of creditors or withholding knowledge thereof by failure or refusal to divulge owed information." 4 *Collier on Bankruptcy,* ¶ 727.02[6][b] (5th ed. 1994), citing *In re Shoesmith,* 135 F. 684 (7th Cir.1905), dism'd on appeal, 198 U.S. 582, 25 S.Ct. 804, 49 L.Ed. 1172 (1905); *Continental Bank and*

9. Sicari testified that the Kingston property was conveyed to the Sicari–Clifford Trust in 1983 when the Trust was created (III, 336–37, 344, 347). However, the deed from Sicari and his wife to the Trust is dated August 24, 1990 and was recorded on October 22, 1990, and Sicari identified both his and his wife's signatures thereon.

*Trust Co. v. Winter,* 153 F.2d 397 (2d Cir. 1946),[10] *cert. denied,* 329 U.S. 717, 67 S.Ct. 49, 91 L.Ed. 622 (1946). Further, "[w]hen a secret trust exists in favor of the debtor with respect to real property fraudulently conveyed more than one year before filing a petition ..., his non-disclosure thereof constitutes a concealment of his property in fraud of creditors." 4 *Collier on Bankruptcy,* ¶ 727.02[b] (15th ed. 1994), citing *In re Baxter,* 27 F.Supp. 54 (S.D.N.Y.1939).

In *First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883 (7th Cir.1983), creditors sought a denial of the debtor's discharge based on concealment of assets under § 727(a)(3). The creditors submitted proof of transfer of funds by the debtor to his father, with which the father purchased a condominium subsequently held by the Bank under a land trust for the benefit of the father. The note for the mortgage loan was signed by the debtor's parents. However, it was the debtor who subsequently lived in the condominium and paid its expenses. The Court found that the creditors had met their burden of going forward and that the burden then shifted to the debtor to produce evidence in rebuttal. Upon the debtor's failure to do so, the Court found the creditors had established a concealment of assets by the debtor, citing an earlier Seventh Circuit decision, *In re Kauffman,* 675 F.2d 127 (7th Cir.1981).

In *Kauffman, Id.,* the debtor transferred his house to his wife but continued to pay its expenses and listed it as a personal asset on personal financial statements. In rejecting the debtor's argument that the evidence failed to show the existence of a secret trust since the conveyance was recorded, the Court stated that "[a] concealment ... need not be literally concealed. The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property is sufficient to constitute a concealment." The Court, further, rejected the debtor's arguments that he retained no beneficial interest in the property and that there was no evidence of intent to hinder, delay or

defraud creditors. The Court stated that intent "must be gleaned from inferences drawn from a course of conduct." (Citing *In re Vecchione,* 407 F.Supp. 609, 615 (E.D.N.Y. 1976)). The Court noted that "[t]he transfer was made specifically to avoid a judgment." *Kauffman,* at 128. The denial of the debtor's discharge was affirmed.

In *Sacklow v. Vecchione (In re Vecchione),* 407 F.Supp. 609 (E.D.N.Y.1974), the Court reversed, as clearly erroneous, the Bankruptcy Court's finding that the debtors' transfers of property to their wives did not constitute fraudulent concealment of assets. The transfers to the wives included personal residences, automobiles, pension fund checks, and various other sums of moneys, including earnings. The plaintiff/appellant objected to discharges being granted, arguing that as soon as each of the debtors became financially obligated, he began a "systematic plan to nominally divest himself of assets through sham intra-family transfers." *Vecchione,* at 613.

In considering the principle of continuing concealment of assets, the Court stated:

> Concealment ... has been defined as the transfer to a third party of legal title to property with the retention of a secret interest by the bankrupt. If the transfer is absolute, even if it was in fraud of creditors, it cannot form a specification of objection [to discharge].... The property must, in effect, be held in trust for the bankrupt. It matters not how long before the filing of the petition the suspect transfer occurred because the act of concealment is considered a continuous one. A concealment may be predicated on the retention by the bankrupt of an equitable interest in assets transferred to his wife. (citations omitted).

*Vecchione,* at 614.

■ Sicari transferred the Kingston property, a personal asset valued at approximately $221,500.00, to the Trust in 1990. Transfer tax stamps on the deed indicate a

---

10. The Court there stated, "[p]roperty is concealed or permitted to be concealed within the meaning of those terms in the definition of the first act of bankruptcy in § 3, sub. a, when a

person does, or permits to be done, anything with intent to hinder, delay or defraud his creditors which prevents, or tends to prevent the discovery of the property."

consideration paid of $30,000.00. The transfer was effected approximately one month before entry of substantial money judgments against Sicari, but more than one year before his bankruptcy filing. Thus, in order to constitute grounds for denial of discharge under § 727(a)(2)(A), a continuing concealment must be found.

Clearly, Sicari's transfer of the Kingston property to the Trust placed a valuable personal asset beyond the reach of his creditors. If the transfer were absolute, being time-barred, it could not form the basis for a § 727(a)(2)(A) objection. However, the transfer was not absolute, and Sicari, in fact, retained a continuing undisclosed interest in the Kingston property.

Tenant Fredi Kletter produced an unsigned lease memorializing her initial agreement. The lease emanated from Sicari's office. (Plaintiff's Exhibit 7). The lease, running from March 1, 1991 to March 31, 1996, is for a term subsequent to the 1990 transfer of the Kingston property to the Trust.

Sicari could not explain why this lease was drawn on his "letterhead" or why it showed him and his wife as landlords after they had transferred the property. (II, 286). However, his secretary/bookkeeper, Patty Jacobsen, managed the Kingston property most of the time after January, 1990.

It was not until just prior to Sicari's bankruptcy filing that Kletter received a letter stating that, effective May 11, 1992, future rent checks should be payable to the Sicari–Clifford Trust. (Plaintiff's Exhibit 8). Of twelve cancelled rent checks produced by Kletter running from May, 1991 to April, 1992, ten were payable to "A. Sicari" or "Anthony Sicari," and two were payable to "A & E Sicari." One of these rent checks, dated October 8, 1991 and payable to Anthony Sicari, was endorsed by Sicari[11] and deposited to his wife's bank account. Another check, dated March 5, 1992 and payable to A. Sicari, was endorsed by Sicari and deposited to the account of Tonia Cara.

Another tenant of the Kingston property, John DeGasperis, produced nine cancelled rent checks dated from September 13, 1991 to June 15, 1992. The three checks issued in June, 1992 are payable to the Sicari–Clifford Trust (which is consistent with tenant Kletter's also doing so in June, 1992). However, the six checks issued between September, 1991 and April, 1992 are payable to "Anthony Sicari Inc." One of them, dated March 1, 1992, was deposited to Tonia Cara's account. Another, dated April 28, 1992, was also not deposited to the Trust account.

A check from another tenant of the Kingston property, Regina Heller, dated May 12, 1992 in the amount of $1,000.00, was deposited to Sicari's wife's account. The check is marked "Rent/Security—290 Fair" and is payable to Anthony Sicari. Endorsements are in the names of Anthony and Esther Sicari, with Esther's account number written beneath.

Sicari's only explanation as to why so many rent checks generated by the Kingston property continued to be made payable to him, or to him and Esther, or to Anthony Sicari, Inc., rather than to the Sicari–Clifford Trust, was that it occurred through the mistake of the tenants. Similarly, Sicari claimed it was through mistake that the various tenants sent their rent checks to him, rather than to the Trustee of the Trust. Sicari offered nothing to show that these checks were ever forwarded on to the Trustee for deposit to the Trust account. Sicari's secretary/bookkeeper, Patty Jacobsen, processed these rent checks for deposit, and she had direct contact with the tenants. Moreover, it was not until May, 1992, one month prior to Sicari's bankruptcy filing, that notice was given to the tenants to pay their rent to the Trust. Further, Sicari had no explanation as to why rent checks payable to him and endorsed by him and his wife were deposited to his wife's bank account rather than to the Trust account. He also could not explain why some of the checks were deposited to Tonia Cara's account rather than to the Trust account. Sicari claimed that his ac-

---

**11.** Although Sicari denied at trial that he endorsed this check, this testimony is inconsistent with his deposition testimony on February 3, 1993, in which he admitted his signature. (II, 287; Plaintiff's Exhibit 30, p. 41).

countant reconciled the bank accounts, but no bank records were introduced to substantiate this claim. Although Sicari's accountant was called as a witness, no testimony was adduced to establish these alleged correcting bank transfers. Nor was the Trustee of the Trust, Diane Cagliuso, Sicari's sister-in-law, called to explain the alleged erroneous deposits of Trust rental income to other bank accounts, or to substantiate the alleged return of that money to the Trust. Nor was Sicari's wife, Esther, called to explain the deposits to her personal account of rental income belonging to the Trust.

In *United States v. Klupt*, 475 F.2d 1015 (2d Cir.1973), the diversion of four assigned account receivable checks to another corporation controlled by the defendant was found to constitute concealment of assets of the debtor corporation, despite the later return of proceeds of the checks. Similarly, the deposit of seven assigned account receivable checks to debtor corporation's payroll account, instead of forwarding them to the factor, was found to constitute concealment of assets of the debtor.

In *In re Kauffman*, 675 F.2d 127 (7th Cir.1981), the Court discussed the debtor's failure to offer credible evidence to rebut plaintiff's prima facie case, citing language from *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811 (7th Cir.1966) that the debtor's explanation "must consist of more than ... [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Baum*, at 814. Further, the *Martin* Court stated:

> [i]t is clearly unsatisfactory to grant the debtor a discharge in a case such as this, where the debtor "stonewalls" the creditor and refuses to credibly explain to the court his puzzling or suspect transactions. The speculation of the bankruptcy judge or the creditors as to what may actually have been occurring is not an adequate substitute for a believable explanation by the debtor. The evidence in this case which could satisfactorily explain the events in question is far more likely to lie in the hands of a debtor than of the creditor. The debtor presumably knows why what is usually a simple matter (either the pur-

chase of a condominium or an intrafamily gift) has taken on such a byzantine character. To the extent that the debtor can explain these events he has an obligation to come forward and do so—he cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation.

*In re Martin*, 698 F.2d 883, 888 (7th Cir. 1983). Commenting on the debtor's explanation of the transfer, the Court stated:

> Seldom has this Court observed witnesses whose credibility was lower. It was not so much that they appeared to be lying as it was that they seemed to be indifferent to the truth.

*In re Martin*, at 885.

Here, I am satisfied that Plaintiff has established a prima facie case under § 727(a)(2)(A). Plaintiff offered sufficient proof to establish that Sicari transferred legal title of the Kingston property to a trust for the benefit of his children, for inadequate consideration, while retaining a beneficial interest therein, and that he concealed this interest, and the income derived therefrom, from his creditors. Sicari failed to rebut Plaintiff's case with credible testimony or with any documentary evidence, such as bank statements, which should have been readily available to him.

I find that Sicari transferred the Kingston property in 1990 to his children's Trust, just prior to the entry of substantial money judgments against him, with intent to hinder, delay or defraud his creditors, and that his concealment thereof continued through the time of filing bankruptcy. Moreover, having determined that Sicari retained a beneficial or equitable interest in the Kingston property, I find that he transferred rental income therefrom within a year prior to filing bankruptcy with intent to hinder, delay and defraud his creditors.

*Transfer of the Virgo Building, and diversion of rental income.*

The Virgo Building was transferred by Sicari and his wife to their long-time family friend, Tonia Cara, in 1990. Sicari testified that the sale price was $161,000.00. Sicari did not list any interest in this property in

his bankruptcy schedules, nor did he disclose the transfer thereof in his Statement of Financial Affairs.

Plaintiff contends that this transfer, like the Kingston property transfer, was a sham, made without fair consideration or good faith, and with intent to hinder, delay or defraud creditors. It is claimed that Sicari retained a secret beneficial interest in the property after its transfer to Cara, in that he continued to exercise control over and to receive rental income from it. Plaintiff, therefore, claims that within the year prior to filing bankruptcy Sicari concealed his interest in the Virgo Building and transferred the rental income therefrom with intent to hinder, delay or defraud his creditors, thus warranting denial of his discharge under § 727(a)(2)(A). Plaintiff again invokes the doctrine of continuing concealment (previously discussed), as this transfer also was made more than one year prior to Sicari's bankruptcy.

The deed conveying the Virgo Building to Cara is dated two days before the deed transferring the Kingston property to the Sicari–Clifford Trust, and both deeds were recorded within a month of each other. Both transfers occurred just prior to the entry of money judgments against Sicari totaling more than $4.6 million.

Plaintiff claims that the Virgo Building was conveyed without fair consideration, alleging an assessed value at the time of transfer in 1990 in excess of $215,000. However, no testimony was offered to establish the assessed value of the property or to substantiate the allegation of inadequate consideration.

Sicari testified that the sale price of the Virgo Building was $161,000, which was "paid" by forgiveness by Tonia Cara of a $76,000 debt owing to her from Sicari for building maintenance and construction services, and by payment of the balance in cash from Cara to his wife. Although Sicari claimed a journal was maintained to record Cara's services on a weekly basis, no journal was produced to substantiate the claimed antecedent debt. Further, Sicari failed to provide the date of payment by Cara to his wife of the balance of the sale price, and did not support his testimony of a $76,000 debt-forgiveness by any documentary proof whatsoever.

Sicari's trial testimony regarding this transfer was inconsistent with that given at his February 3, 1993 pretrial deposition. At his deposition he testified that the $161,000 purchase price was paid by satisfaction of the mortgage with Intercounty Bank, payment of a "small amount of money" that he owed Cara for maintenance and repair of the building, and check for approximately $100,000. Again, no documentary evidence was produced to support this testimony.

Tenant Vincent Giordano rented an apartment in the Virgo Building since August, 1991 under a two-year lease. (Plaintiff's Exhibit 18). This lease, drawn on Sicari's letterhead, shows the landlord as: "Tonia Cara c/o Sicari, 521 Main Street, New Paltz, NY 12561." The addresses for both Sicari and Cara are the same.

Giordano's copy of the lease includes two signature pages. The first (Page 3) was executed by Giordano and his wife on July 22, 1991 at Sicari's "dress building," and Esther Sicari signed it as landlord. A few weeks later, Giordano received by mail a copy of a new signature page (Page 4 of Plaintiff's Exhibit 18) signed by Tonia Cara as landlord.

Giordano also produced eleven cancelled checks in payment of security and rent for the Virgo Building from August, 1991 through May, 1992. Although all are payable to Tonia Cara, one of them was deposited in the Trust account and five were deposited in Sicari's wife's account.

The transfer of the Virgo Building and diversion of the rental income it generated likewise supports a finding that Sicari engaged in a continuing pattern of conduct of transferring and concealing his personal assets with intent to hinder, delay and defraud his creditors. As enunciated in *In re Vecchione*, 407 F.Supp. 609, 618 (E.D.N.Y.1976), while a challenged asset-transfer alone might be considered innocent, "the totality of the situation [may be] such that the court is impelled to conclude that [the debtor has] retained [an] equitable interest . . ." in assets

transferred, and it is the "cumulative effect" of a course of conduct which may give rise to an inference of knowing and fraudulent intent.

Though legal title has changed hands, Sicari continued to control, enjoy and benefit from the rental income from the Virgo Building. Sicari retained a secret, beneficial interest in this asset which he concealed from his creditors. That concealment, continuing into the year preceding his bankruptcy filing, must be inferred to have been done with intent to hinder, delay and defraud his creditors. As noted in *Vecchione,* 407 F.Supp. 609, 615 (E.D.N.Y.1976),

> [p]ersons whose intention it is to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct. (citations omitted).

The intent necessary to here sustain an objection to discharge under § 727(a)(2)(A) has been established. Sicari failed to put forth credible evidence to rebut Plaintiff's prima facie case, rather claiming ignorance of the transactions and mistake by others.

### CODE SECTION 727(a)(4)(A)

Plaintiff alleges that Sicari made a false oath in his bankruptcy petition and schedules in that he failed to disclose various assets, either intentionally or with such reckless indifference to the truth, as to constitute fraud.

Code § 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

> (4) the debtor knowingly and fraudulently, in or in connection with the case—

>> (A) made a false oath or account. . . .

11 U.S.C. § 727(a)(4)(A).

A discharge under § 727 is a privilege, not a right (*In re McManus,* 112 B.R. 773, 775 (Bankr.E.D.Va.1990)), and may only be granted to the honest debtor (*In re Tabibian,* 289 F.2d 793, 794 (2d Cir.1961)). A debtor has "an affirmative duty to list all assets and fully answer the questions in the petition, and he does so under oath." *Ray v. Graham (In re Graham),* 111 B.R. 801, 806 (Bankr.E.D.Ark.1990). A material omission from a debtor's sworn statement of affairs or schedules presents grounds for denying a discharge under 11 U.S.C. § 727(a)(4)(A). *Farmers Co-operative Association v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 n. 3 (11th Cir.1984); *First Federal Savings and Loan Assoc. of Raleigh v. Johnson (In re Johnson),* 82 B.R. 801 (Bankr.E.D.N.C. 1988).

The purpose of § 727(a)(4)(A) is, therefore,

> to insure that debtors provide reliable information to those with an interest in the administration of the debtor's estate. Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs. (Citing *In re Ingle,* 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987)).

*In re Johnson,* at 805. The debtor's complete disclosure is essential to the proper administration of the bankruptcy estate (*In re Evans,* 106 B.R. 722, 723 (Bankr.M.D.Fla. 1989)) and is a prerequisite to obtaining a discharge in bankruptcy (*In re Montgomery,* 86 B.R. 948, 956 (Bankr.N.D.Ind.1988)).

To bar a discharge under § 727(a)(4)(A), plaintiff must establish that: (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *Williamson v. Fireman's Fund Insurance Co.,* 828 F.2d 249, 251 (4th Cir.1987).

Plaintiff alleges that Sicari made false oaths in his bankruptcy Petition, Schedules and Statement of Financial Affairs by: (1) failing to list an equitable interest in the Sicari–Clifford Trust and the Kingston property transferred to it; (2) failing to list an equitable interest in bank accounts of his wife and of Tonia Cara; (3) failing to list an equitable interest in the Virgo Building

transferred to Tonia Cara; and (4) failing to list his ninety percent interest in Sicari Associates.

Sicari declared under penalty of perjury that the information provided in his bankruptcy Petition, Schedules and Statement of Financial Affairs was true and correct. Such constitutes an oath and satisfies the first element of proof under § 727(a)(4)(A).

Plaintiff also established that Sicari's statements were material to the bankruptcy case. Materiality is established if the oath "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 251 (4th Cir. 1987); *In re Johnson*, 82 B.R. 801, 805 (Bankr.E.D.N.C.1988); *See also, In re Chalik*, 748 F.2d 616 (11th Cir.1984). Detriment or prejudice to a creditor is not an element of materiality. *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir.1974). The alleged omissions from Sicari's bankruptcy Schedules and Statement of Financial Affairs satisfy the element of materiality.

Sicari failed to disclose his interest in the Sicari–Clifford Trust. As previously discussed, in 1990, just prior to the entry of substantial money judgments against him, Sicari transferred the Kingston property to the Trust. The evidence supports a finding that the transfer was not absolute and that Sicari retained a secret, beneficial interest in the property. Failure to disclose his interest in the Kingston property and the rental income therefrom, constitutes a false oath within the purview of § 727(a)(4)(A).

Sicari also failed to disclose any interest in the insurance proceeds for damage to his personal residence. Although the $45,552 insurance proceeds check was diverted to the Trust bank account, only $35,000 of it was withdrawn from the Trust account to pay for the repairs on Sicari's behalf. Sicari was obligated to account for and disclose the remaining $10,552 as an asset of this bankruptcy estate. His failure to do so also constitutes a false oath under § 727(a)(4)(A).

Additionally, Sicari failed to list an interest in the Virgo Building and the rental income therefrom. Having previously determined that Sicari retained an interest in the Virgo Building and the rental income it generated after its transfer to Tonia Cara, he was required to disclose this interest in his bankruptcy Petition, Schedules and Statement of Financial Affairs. His failure to do so constitutes yet another false oath under § 727(a)(4)(A).

In his Statement of Financial Affairs, Sicari declared that he made no transfers or gifts within the year immediately preceding his bankruptcy filing. From the evidence presented regarding the rental income from the various properties and insurance proceeds for damage to his personal residence, I am satisfied that this statement was false.

Sicari also failed to schedule his ninety-percent interest in Sicari Associates, the "informal association" he maintained with his uncle, although he did disclose four parcels of real property owned by it. (Second Amended Pre–Trial Stipulation). He answered "None" to Question B–13 of his Schedule of Personal Property requiring disclosure of all "interests in partnerships or joint ventures." A debtor may not pick and choose among his assets and holdings so as to schedule only those which he may deem to be valuable, important or relevant. Rather, a debtor is obliged to completely and accurately list all property of every kind and nature, tangible and intangible, legal and equitable, which may comprise his bankruptcy estate, and to respond truthfully to all questions in the Schedules and Statement of Financial Affairs. "The determination of relevance and importance of the question is not for the debtor to make. It is the debtor's role simply to consider the question carefully and answer it completely and accurately." *In re Mazzola*, 4 B.R. 179, 182 (Bankr. D.Mass.1980).

In *In re Chalik*, 748 F.2d 616 (11th Cir.1984), the Court affirmed the denial of the debtor's discharge based on his omission from his bankruptcy schedules of interests in certain corporations. The Court accepted the Bankruptcy Court's finding that while "there [was] no present indication that the

concealed information would have or could have revealed assets available for creditors ... that circumstance does not excuse the concealment of information, which is necessary to the investigation of a debtor's financial condition." *In re Mascolo,* 505 F.2d 274, 277–78 (1st Cir.1974); *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974). *See also,* 4 *Collier on Bankruptcy,* ¶ 727.04 (15th ed. 1994). The denial of a discharge will not be avoided by debtor's assertion that omitted or falsely stated information concerned a "worthless business relationship or holding," such defense being categorized as "specious." *In re Chalik,* 748 F.2d 616, 618 (citing *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330 (2d Cir.1969)). Accordingly, Sicari's failure to disclose his interest in Sicari Associates constitutes a false oath under § 727(a)(4)(A).

Plaintiff has also presented evidence sufficient to establish that Sicari knew the statements made in his bankruptcy Schedules and Statement of Financial Affairs were false. After transfer of the Kingston and Virgo properties, Sicari continued to be involved in the control and maintenance of those properties. Rental income from the properties continued to be received at his address by his representative and was diverted to various accounts in a manner inconsistent with the rent payments. Rental income from the Medical Building and the Widmark Farm property was diverted to his children's Trust.

Sicari failed to offer credible evidence to rebut Plaintiff's prima facie case. It appears inescapable that, faced with impending collection efforts on money judgments exceeding $4.6 million, Sicari embarked on a scheme to transfer his assets and conceal the transfers from his creditors. Sicari neither disclosed these transfers nor scheduled the underlying assets in his bankruptcy case.

Likewise, the evidence sufficiently establishes that Sicari made the false statements with fraudulent intent. His diversion of assets, secreting them from his creditors and failing to list them in his bankruptcy case are indicative of his fraudulent intent. Fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. *Dev-*

*ers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751, 753–54 (9th Cir.1985). Moreover, fraudulent intent may be inferred, for purposes of a § 727(a)(4)(A) objection, from a debtor's reckless indifference to or cavalier disregard of the truth. *Diorio v. Kreisler–Borg Construction Co. (In re Diorio),* 407 F.2d 1330, 1331 (2d Cir.1969); *MacLeod v. Arcuri (In re Arcuri),* 116 B.R. 873, 883 (Bankr.S.D.N.Y.1990); *In re Gugliada,* 20 B.R. 524 (Bankr.S.D.N.Y.1982). The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth. *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey),* 145 B.R. 919, 928 (Bankr. N.D.Ill.1992).

Plaintiff has established a prima facie case under § 727(a)(4)(A). Sicari failed to offer credible evidence in rebuttal, and Plaintiff's objection to Sicari's discharge is, therefore, sustained on this ground as well.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(J).

2. Plaintiff has sustained its burden of proving by a preponderance of the credible evidence that the debtor, with intent to hinder, delay or defraud creditors, transferred and concealed property of the debtor within one year prior to filing his bankruptcy petition, as proscribed by 11 U.S.C. § 727(a)(2)(A).

3. Plaintiff has sustained its burden of proving by a preponderance of the credible evidence that the debtor knowingly and fraudulently, in connection with this case, made a false oath or account, as proscribed by 11 U.S.C. § 727(a)(4)(A).

4. Accordingly, the debtor's discharge is denied under both 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A).